UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X  **JURY TRIAL DEMANDED**
DR. VARLETON McDONALD,

                Plaintiff,                      Case No.

   -against-

HEMPSTEAD UNION FREE SCHOOL DISTRICT,
BOARD OF EDUCATION OF THE HEMPSTEAD
SCHOOL DISTRICT, DAVID B. GATES, Individually
and in his official capacity, RANDY STITH, Individually
and in his official capacity, and LAMONT E. JOHNSON,
Individually and in his official capacity,              **COMPLAINT**

                Defendants.
-----------------------------------------------------------------------X

      Plaintiff, by his attorneys, Law Office of Mark E. Goidell, as and for his Complaint against the Defendants, states and alleges the following:

**PRELIMINARY STATEMENT**

      1.     This action seeks injunctive and monetary relief for violations of Plaintiff's rights under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution, and for New York State statutory retaliation claims against the HEMPSTEAD UNION FREE SCHOOL DISTRICT, BOARD OF EDUCATION OF THE HEMPSTEAD SCHOOL DISTRICT, DAVID B. GATES, in his individual and official capabilities, RANDY STITH, in his individual and official capabilities, and LAMONT E. JOHNSON, in his individual and official capabilities.

      2.     Specifically, Plaintiff alleges that the Defendants, acting individually and in conspiracy with each other, retaliated against Plaintiff by terminating his employment (i) for the exercise of his rights to free speech and/or association, and (ii) for Plaintiff's protected communications about rampant and corrosive corruption, waste, and gross illegalities in the

Defendant Hempstead Union Free School District.

3. Defendants retaliated against Plaintiff knowingly and/or with the consent and condonation of the Defendants.

## JURISDICTION AND VENUE

4. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 and the aforementioned constitutional and statutory provisions. Plaintiff further invokes the pendent jurisdiction of this Court to hear and decide Plaintiff's claims arising under state law.

5. Venue herein is proper under 28 U.S.C. §§ 1391(b)(1) and (b)(2) because the cause of action arose in the Eastern District of New York and/or the Defendants all reside or are located in Nassau County.

## PARTIES

6. Plaintiff DR. VARLETON McDONALD (hereinafter "Dr. McDonald" or "Plaintiff") was employed by the Defendant Hempstead Union Free School District and/or Defendant Board of Education of Hempstead School District as Deputy Superintendent from November 6, 2017 until his discharge on January 17, 2018.

7. At all times relevant herein, Defendant HEMPSTEAD UNION FREE SCHOOL DISTRICT (the "District") was and is a municipal corporation duly organized and existing by virtue of and under the laws of the State of New York.

8. At all times relevant herein, Defendant BOARD OF EDUCATION OF HEMPSTEAD SCHOOL DISTRICT (the "Board") was and is a municipal corporation duly organized and existing by virtue of and under the laws of the State of New York.

9. At all times relevant herein, Defendant DAVID B. GATES, individually and in his official capacity, was and is an individual employed or appointed by the District and/or the Board as

a Trustee and member of the Board.

10. At all times relevant herein, Defendant RANDY STITH individually and in his official capacity during, was and is an individual employed or appointed by the District and/or the Board as a Trustee and member of the school board.

11. At all times relevant herein, Defendant LAMONT E. JOHNSON, individually and in his official capacity, was and is an individual employed or appointed by the District and/or the Board as a Trustee and member of the school board.

## BACKGROUND FACTS

12. For more than the last three decades, the schools in the District were among the worst in the State of New York. The District suffers from a gap in funding that leads to disparities in class size, technology and resources which impact academic progress.

13. However, the District's failure to educate the children of Hempstead goes beyond a lack of resources. Decades of entrenched, incompetent and neglectful leadership has exacerbated the challenges faced by the District resulting in a disastrous educational system in Hempstead.

14. Historically, members of the Board failed to put the interest of children above their own personal, political and financial interests.

15. The District has been faced with numerous problems, including violence in the schools, cultural and racial tensions between African-American and Latino students, poor academic performance, dismal graduation rates, deplorable facilities and conditions, illegal hiring practices, wasteful spending, along with a gross lack of leadership and accountability.

16. In June 2017, following a nationwide search, Dr. Shimon Waronker ("Dr. Waronker") was hired by the District as the new Superintendent. Dr. Waronker is a highly regarded education reformer and administrator.

17. Over the course of many years, Dr. Waronker and Dr. McDonald had worked together in schools throughout the City of New York. Dr. McDonald was previously employed as a Superintendent and Principal in schools in New York City, and was acclaimed for his work in curbing violence and creating constructive learning environments in schools under his supervision.

18. Upon the recommendation of Dr. Waronker, the District hired Dr. McDonald as Deputy Superintendent on or about November 6, 2017.

19. The duties and responsibilities of Dr. McDonald as Deputy Superintendent were to supervise assigned assistant superintendents and chief information officer, review and interpret all laws, regulations, statutes, rules and policies affecting the school division, respond to inquiries for interpretation from division staff on matters not clearly covered by regulation, policy or legislation, annually evaluate assigned assistant superintendents, chief information officer and principals for job effectiveness, oversee administration of the fiscal and human resources of assigned departments, review evaluations submitted by assigned assistant superintendents and chief information officer on personnel under their supervision, oversee, implement and evaluate a strategic plan, assist in the preparation and administration of budget fro assigned departments, assist in the determination of types of programs needed by the school division and make recommendations, support the Superintendent in the review and revision of operational goals and objectives, and efforts to measure progress toward their attainment, prepare and provide workshop presentations for the Board, establish and maintain effective working relationships with community and state agencies, area businesses, industries and other organizations, organize and/or chair various committees as directed, explain and interpret programs to staff, parents and the general public, collaborate and work cooperatively with advisory boards, and respond to parent and community concerns.

20. In his capacity as Deputy Superintendent, Dr. McDonald was not responsible for the

determination of policy or investigations into corruption, abuses and mismanagement.

21. Soon after his hire, Dr. Waronker, along with the then majority of the Board, brought in much needed Special investigators to begin to root out corruption and mismanagement in the District and hired a forensic auditing firm to examine the District's books and records.

22. Dr. McDonald became aware of the problems plaguing the District for decades and attempted to implement the initiatives directed by Dr Waronker

23. Dr. McDonald attempted to implement a violence suppression and security plan in order to curb long-standing violence in District schools and in particular, Hempstead High School.

24. Dr. McDonald discovered that the District had outdated and ineffective policies regarding attendance and discipline and attempted to create and effectuate new and improved policies.

25. Among other things, Dr. McDonald became aware of an unabated gang presence in the schools, unreported incidents of violence and gang activities, students wandering the hallways without permission or supervision, and a cache of weapons seized and unsecured without reports to law enforcement.

26. Dr. McDonald and Dr. Waronker conducted a review of student transcripts to determine, among other things, the graduation needs for individual students. Dr. McDonald discovered that almost three hundred (300) students who were classified as "seniors" had grossly deficient credits or had stopped attending school altogether and were ineligible for graduation. Further, Dr. McDonald discovered that the student population and graduation reports submitted to the New York State Commissioner of Education were grossly inflated for the purpose of obtaining funds from New York State.

27. The audit of student transcripts further revealed that approximately 75 percent (75%)

of Hempstead High School seniors would not graduate and would fail to earn a high school diploma.

28. Dr. McDonald also became aware of a policy of "social promotion," a practice whereby students are promoted to the next grade purely to keep them with peers of their own age and without regard to their demonstrated mastery of the appropriate academic material.

29. Dr. McDonald became aware of a New York State Department of Education audit finding widespread grade fixing whereby close to 2,000 grades were changed, resulting in students who earned failing grades receiving passing grades.

30. Mr. Carlos Ramirez, an administrator who informed New York State officials about the District's practice of systematically inflating grades, was subjected to retaliation and terminated from his employment because of his whistleblowing.

31. Dr. McDonald and Dr. Waronker performed a facilities review that found 1,600 students in crumbling and moldy trailers, some of which are 34 years old, unmaintained and decaying boilers, flooding, and graffiti that was more than 13 years old. They found decaying boilers without maintenance, vermin infestations, flooding, 1600 students in trailers, a building named Rhodes that has been abandoned for 17 years, and unabated graffiti going back to 2004 in many buildings

32. In fact, as it was reported in *Newsday*, the High School was shut down on January 2, 2018 because ten classrooms were flooded due to a burst pipe and four burst toilet pipes.

33. Dr. McDonald prepared a plan to redirect programs and staff to more appropriate District facilities.

34. Dr. McDonald and Dr. Waronker encountered substantial resistance to the implementation of new programs and initiatives, which would have disrupted the long-entrenched patronage, nepotism, and corruption plaguing the District.

35. Dr. McDonald became aware of other gross financial improprieties, including but not limited to a side catering business being conducted by the District's Head of Food Services utilizing the equipment and facilities of the District.

36. In December 2017, the Federal Bureau of Investigation ("FBI") contacted Dr. McDonald and requested a meeting regarding some of the practices and policies of the District. Dr. McDonald met with the FBI in December 2017 and told the investigators about many of the findings set forth above.

37. Dr. McDonald told District administrative staff and the Board President about the FBI meeting and the concerns expressed by FBI investigators soon after his meeting with the FBI. Additionally, a district-wide email was sent in December 2017 by Dr. Waronker regarding the FBI investigation.

38. Dr. McDonald also told the New York State Deputy Commissioner of Education about the findings set forth above during a video conference in December 2017, and discussed the conference with the Deputy Commissioner as well as the findings set forth above with District administration and Board members.

39. Dr. Waronker directed a forensic accounting firm to audit the District's financial practices and procedures. In an examination of payroll records for the immediate years prior to 2017-2018, that study revealed, among other things, 295 payroll distributions to 129 individuals who were not active employees of the District at the time of the payroll distribution, and that there were 500 employees who were paid as vendors during fiscal years 2013-2017.

40. The audit also revealed that the District paid millions of dollars to a nominal tutoring service, known as "Easy A Tutoring," which was owned and operated by an individual who is the domestic partner of a Board member, Defendant Lamont Johnson, on fraudulent and/or inflated

invoices, frequently for phantom services.

41. Defendant Lamont Johnson had been removed as a Board member and trustee, but brought a successful petition to the New York State Commissioner of Education resulting in his restoration to the Board on November 27, 2017. As a result, the Board majority changed and the long established status quo was restored, curtailing the ability of Plaintiff and Dr. Waronker to implement change.

42. Among other things, the Board thereupon fired the Special investigators, who were investigating abuse, mismanagement and possible corruption, and fired the Master Teachers, who were hired to improve the quality of teaching throughout the District.

43. The newly constituted Board then voted on January 9, 2018 to place Dr. Waronker on "Administrative Leave of Absence With Pay, Effective Immediately." Regina Armstrong was appointed as Interim Superintendent.

44. Dr. McDonald received a copy of the preliminary report of the forensic study in early January 2018. Dr. McDonald thereafter provided a copy of the preliminary report to Regina Armstrong. Dr. McDonald discussed the preliminary report and its findings with Regina Armstrong and District Administration.

45. Dr. McDonald was terminated from his employment within days thereafter, on January 17, 2018.

## AND AS FOR A FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 – FIRST AND FOURTEENTH AMENDMENTS)

46. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 45 of this Complaint with the same force and effect as though fully set forth herein.

47. Defendants violated the First and Fourteenth Amendments to the United States

Constitution and 42 U.S.C. §1983 by retaliating against Plaintiff after Plaintiff communicated the findings of corruption and mismanagement set forth above to the FBI, New York State Commissioner of Education, District administration, and Board members.

48. The matters discovered and communicated by Plaintiff are of great public concern.

49. Plaintiff's disclosures regarding the findings set forth above resulted in Plaintiff's dismissal from employment.

50. Plaintiff's discovery and further disclosure of information about and against Defendants motivated Defendants to terminate Plaintiff's employment.

51. Acting under color of law, Defendants willfully and maliciously retaliated against Plaintiff for Plaintiff's engagement in the aforementioned constitutionally protected activity by terminating Plaintiff's employment.

52. By silencing, punishing, and causing the termination of Plaintiff's employment, Defendants have sought to unlawfully retaliate against Plaintiff and eliminate his voice, and thereby block, limit and deter the Plaintiff and other persons from exposing wrongdoing, public abuses, violations of law and exercising their civil, statutory and constitutional rights.

53. As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to loss of employment, diminished employment opportunities and prospects, mental anguish, humiliation, embarrassment and damage to this reputation.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 – FIRST AND FOURTEENTH AMENDMENTS)**

54. Plaintiff repeats and reiterated each and every allegation set forth in paragraphs 1 through 53 of this Complaint with the same force and effect as though fully set forth herein.

55. The aforementioned retaliatory discharge of Plaintiff from employment violate Plaintiff's Freedom of Association rights protected under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

56. Plaintiff and Dr. Waronker engaged in extensive association with each other in an attempt to reform the District and bring much needed change to the students and population of the District, and in opposing the practices and policies of the District set forth above.

57. The matters for which Plaintiff and Dr. Waronker associated are of great public concern.

58. The association between Dr. Waronker, viewed as hostile to Defendants' self-interests, and Plaintiff resulted in Plaintiff's dismissal from employment.

59. Plaintiff's association with Dr. Waronker motivated Defendants to terminate Plaintiff's employment.

60. Acting under color of law, Defendants willfully and maliciously retaliated against Plaintiff for Plaintiff's engagement in the aforementioned constitutionally protected activity by terminating Plaintiff's employment.

61. By silencing, punishing, and causing the termination of Plaintiff's employment, Defendants have sought to unlawfully retaliate against Plaintiff and eliminate his voice, and thereby block, limit and deter the Plaintiff and other persons from exposing wrongdoing, public abuses, violations of law and exercising their civil, statutory and constitutional rights.

62. As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to loss of employment, diminished employment opportunities and prospects, mental anguish, humiliation, embarrassment and damage to this reputation.

## AS AND FOR THIRD CAUSE OF ACTION
### (PURSUANT TO CIVIL SERVICE LAW § 75-b - WHISTLEBLOWER)

63. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 62 of this Complaint with the same force and effect as though fully set forth herein.

64. Plaintiff was terminated by Defendants because of his disclosures regarding the matters set forth herein.

65. Such matters regard violations of law, rule or regulation which creates and presents a substantial and specific danger to the public health or safety, and/or which the Plaintiff reasonably believed to be true and reasonably believed constituted an improper governmental action as defined by law.

66. Defendants retaliated against Plaintiff after Plaintiff communicated the findings of corruption and mismanagement set forth above to the FBI, New York State Commissioner of Education, District administration, and Board members.

67. Plaintiff's disclosures regarding the findings set forth above resulted in Plaintiff's dismissal from employment.

68. Plaintiff's discovery and further disclosure of information about and against Defendants motivated Defendants to terminate Plaintiff's employment.

69. By silencing, punishing, and causing the termination of Plaintiff's employment, Defendants have sought to unlawfully retaliate against Plaintiff and eliminate his voice, and thereby block, limit and deter the Plaintiff and other persons from exposing wrongdoing, public abuses, violations of law and exercising their civil, statutory and constitutional rights.

70. As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to loss of employment,

diminished employment opportunities and prospects, mental anguish, humiliation, embarrassment and damage to this reputation.

## AS AND FOR FOURTH CAUSE OF ACTION
### (PURSUANT TO EDUCATION LAW § 3028-d – WHISTLEBLOWER)

71. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 70 of this Complaint with the same force and effect as though fully set forth herein.

72. Plaintiff was terminated by Defendants because of his disclosures regarding the matters set forth herein.

73. Such matters regard fiscal practices or actions of employees or officers of the District that violate local, state, and/or federal law, rule or regulation relating to financial practices of the District.

74. Plaintiff had reasonable cause to suspect that such practices or actions were unlawful, and made reports thereof in good faith to the FBI, New York State Commissioner of Education, officials of the District, and Board members, as set forth above.

75. Defendants retaliated against Plaintiff after Plaintiff communicated the findings of corruption and mismanagement set forth above to the FBI, New York State Commissioner of Education, District administration, and Board members.

76. Plaintiff's disclosures regarding the findings set forth above resulted in Plaintiff's dismissal from employment.

77. Plaintiff's discovery and further disclosure of information about and against Defendants motivated Defendants to terminate Plaintiff's employment.

78. By silencing, punishing, and causing the termination of Plaintiff's employment, Defendants have sought to unlawfully retaliate against Plaintiff and eliminate his voice, and thereby

block, limit and deter the Plaintiff and other persons from exposing wrongdoing, public abuses, violations of law and exercising their civil, statutory and constitutional rights.

79. As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to loss of employment, diminished employment opportunities and prospects, mental anguish, humiliation, embarrassment and damage to this reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

1. Declaring Defendants' practices and policies, as set forth above, in retaliating against Plaintiffs violative of Plaintiff's rights under constitutional and statutory law;

2. Issuing a preliminary and permanent injunction against Defendants and their officers, agents, employees, representatives and any and all persons acting in concert with them, from engaging in each of the unlawful practices and policies set forth herein;

3. Issuing a permanent injunction requiring Defendants to take such affirmative action as will effectuate the purposes of the law, including but not limited to adopting practices and policies in accord with law, and reinstating Plaintiff to the position of Deputy Superintendent;

4. Awarding Plaintiff monetary damages, including but not limited to back pay, benefits, and promotional opportunities, and an award of front pay compensating Plaintiff for loss of future salary and benefits;

5. Awarding Plaintiff compensatory, punitive, exemplary and liquidated damages;

6. Awarding Plaintiff prejudgment interest;

7. Awarding Plaintiff the costs of this action, together with his reasonable attorney's fees, expert fees, and the expenses and disbursements of this litigation; and

8. Awarding such other and further relief as the Court may deem just and proper.

**<u>A JURY TRIAL IS HEREBY DEMANDED</u>**

Dated: Garden City, New York
October 9, 2018

                                  LAW OFFICE OF MARK E. GOIDELL

                By:    <u>/s Mark E. Goidell</u>
                        MARK E. GOIDELL, Esq.
                        *Attorney for Plaintiff*
                        666 Old Country Road, Suite 700
                        Garden City, New York 11530
                        Tel. (516) 683-0001
                        Fax. (516) 228-0383
                        mark@goidell.com