UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
DR. VARLETON McDONALD,

Plaintiff,

-against-

**MEMORANDUM & ORDER**
18-CV 5658

HEMPSTEAD UNION FREE SCHOOL DISTRICT, BOARD OF EDUCATION OF THE HEMPSTEAD SCHOOL DISTRICT, DAVID B. GATES, Individually and in his official capacity, RANDY STITH, Individually and in his official capacity, and LAMONT E. JOHNSON, Individually and in his official capacity,

Defendants.
---------------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**
Law Office of Mark E. Goidell
666 Old Country Road
Suite 700
Garden City, NY 11530
By: Mark E. Goidell, Esq.

**For Defendants:**
The Scher Law Firm, LLP
One Old Country Road
Suite 385
Carle Place, NY 11514
By: Austin R. Graff, Esq.

**HURLEY, Senior District Judge:**

Presently before the Court are objections by defendants Hempstead Union Free School District (the "District"), Board of Education of The Hempstead School District (the "Board"), David B. Gates ("Gates"), Randy Stith ("Stith") and Lamont E. Johnson ("Johnson") (Gates, Stith and Johnson collectively "Individual

Defendants" and Individual Defendants, the District and the Board collectively "Defendants") to the Report and Recommendation, dated November 7, 2021 ("R&R"), of Magistrate Judge Steven I. Locke insofar as it recommends denial of Defendants' motion for summary judgment on all claims of Plaintiff Varleton MacDonald ("Plaintiff" or "MacDonald") except the claims against the Defendants in their official capacity. For the reasons set forth below, the Court sustains the objections with respect to whether the communications at issue are protected by the First Amendment, declines to adopt the R&R with respect to that issue, and therefore grants Defendants' motion for summary judgment on the First Amendment retaliation claim.

**I. Nature of this Action**

This action arises out of the termination of Plaintiff's employment as the District's Deputy Superintendent of Schools. As alleged in the complaint, Plaintiff contends that the Individual Defendants voted to terminate him in retaliation for his communications with the FBI and New York State Department of Education ("NYSDOE") concerning various improprieties in the District, as well as for forwarding an audit report from Plante Moran detailing such to the then Acting Superintendent of the District, Regina Armstrong ("Armstrong").[1] Defendants deny that such was their motivation and assert that they cast their votes based on the

[1] The complaint also asserted a First Amendment retaliation claim based on Plaintiff's communications to the Board and District Administrators and a claim for First Amendment Freedom of Association retaliation. By Order dated June 28, 2019, the Court dismissed those claims.

recommendation of Armstrong and their own observations regarding the District's lack of a need for a District Deputy Superintendent.

Relevant facts as set forth in Judge Locke's R&R are incorporated by reference. Additional relevant facts are referenced herein as appropriate.

## II. Judge Locke's Report and Recommendation

Judge Locke began his analysis of Plaintiff's § 1983 First Amendment retaliation claim by discussing whether McDonald engaged in constitutionally protected speech, to wit, whether the speech was on matters of public concern and whether he spoke as a citizen, rather than an employee, for First Amendment purposes.

As to whether the speech at issue was on a matter of public concern, Judge Locke noted that Defendants did not dispute that such was the nature of the speech at issue, deemed the point conceded, and went on to address whether McDonald spoke as a citizen. Judge Locke stated that as there was no disagreement as to Plaintiff's written job description and that there was no evidence that he was hired in whole or in part to investigate or report to authorities any corruption. He therefore concluded that there are material questions of facts as to whether the following actions fell outside his responsibilities: uncovering corruption and reporting it to the proper authorities, his meetings and conversations with the FBI and the NYSDOE, and his forwarding of the Plante Moran Report to Armstrong.

Although not addressed by Defendants in their motion papers, Judge Locke also addressed the issue of whether civilian analogues, i.e., a "form or channel of

discourse available to non-employee citizens" was used by McDonald in connection with the speech at issue and found that such civilian analogues did exist.

Finally, Judge Locke concluded that material issues of fact existed as to the causal connection between Plaintiff's protected speech and the Individual Defendants' decision to terminate him.

Having concluded his analysis of McDonald's First Amendment retaliation claim, Judge Locke next turned to the District's claim that it was entitled to summary judgment on the *Monell* claim against it. As the Individual Defendants acted in their capacity as members of the Board of Education in voting to terminate Plaintiff's employment and as the Board of Education is the final decision maker in the District, Judge Locke recommended that summary judgment on the *Monell* claim be denied.

Next, Judge Locke addressed the argument that the Individual Defendants were entitled to summary judgment as to the claims brought against them in their official and individual capacities. He recommended dismissal of the official capacity claims as duplicative of the claims against the District. With respect to the Individual Defendants' assertion of qualified immunity for the claims against them in their individual capacities, he recommended that the Court reject the motion.

Lastly, Judge Locke recommended denial of the motion as to the state whistleblower claims given the conflicting evidence regarding Defendants' knowledge of Plaintiff's prior engagement in constitutionally protected speech and their vote to terminate his employment in retaliation for that speech.

## III. Defendant's Objections

Defendants object to the R&R asserting that the Magistrate Judge erred in recommending denial of their summary judgment motion in that he (1) erroneously concluded that Plaintiff engaged in constitutionally protected speech; (2) incorrectly determined there was sufficient evidence to support *Monell* liability; (3) incorrectly rejected Defendants' claim to qualified immunity and (4) erroneously determined there was conflicting evidence as to the Individual Defendants' knowledge of Plaintiff's protected activity warranting denial of the motion as to Plaintiff's New York statutory retaliation claim

## IV. Standard of Review

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a de novo determination of any portion of the magistrate judge's disposition to which specific written objection has been made. Fed. R. Civ. P. 72(b).

## V. McDonald's First Amendment Retaliation Claim

### A. Relevant Law

To prevail on a claim that he or she was retaliated against in violation of the First Amendment, a plaintiff must establish "'(1) his [or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him [or her]; and (3) there was a causal connection between this adverse action and the protected speech.'" *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018)

(quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). "The inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983).

"Although a public employee 'does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment,' these rights are not absolute, because the public employer has a legitimate interest in regulating the speech of its employees to promote the efficiency of its public services." *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)); *see also Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) ("A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."); *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968)); *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) ("Recognizing that government employers (like private employers) have heightened interests in controlling speech made by an employee in his or her professional capacity, the Supreme Court ruled that a public employee speaking in his official capacity is not speaking as a citizen for First Amendment purposes, and employer retaliation for such speech does not justify the 'displacement of managerial discretion by judicial supervision.'") (internal quotation marks omitted).

"When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). However, there are times when a public employee's speech falls within the ambit of the First Amendment.

To determine whether a public employee's speech is protected, courts conduct a two-step inquiry. *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). First, the court "determin[es] whether the employee spoke as a citizen on a matter of public concern. *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "This step one inquiry in turn encompasses two separate subquestions: '(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee.'" *Id.* (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir.2011)). An employee speaks as a citizen if the speech fell outside of the employee's official responsibilities, and a civilian analogue existed. *Id.* (citing *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203–04 (2d Cir. 2010)). Speech is on a matter of public concern and therefore a protected activity "if it relates 'to any matter of political, social, or other concern to the community.' " *Dillon v. Suffolk Cnty Dept. of Health Servs.*, 917 F.Supp.2d 196, 205 (E.D.N.Y. 2013) (citing *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). If the answer to either subpart is no, the inquiry ends. "If, however, both questions are answered in the affirmative, the court then proceeds to the second step of the two-step inquiry, commonly referred to as the *Pickering* analysis: whether the relevant government entity 'had an adequate justification for treating the employee differently from any other member of the public based on the

government's needs as an employer.'" *Matthews,* 779 F.3d 167 (quoting *Lane v. Franks*, 573 U.S. 228, 134 S. Ct. 2369, 2380 (2014)).

The Second Circuit has identified two relevant inquiries to determine whether a public employee speaks as a citizen: "(1) whether the speech falls outside the employee's official responsibilities, and (2) whether a civilian analogue [(i.e., a form or channel of discourse available to non-employee citizens)] exists." *Montero v. City of Yonkers, New York,* 890 F.3d 386, 397 (2d Cir. 2018 (internal quotations omitted). The first inquiry is the critical one while the second issue "may be of some help in determining whether one spoke as a citizen." *Id.*

To determine whether speech falls outside an employee's official duties, a court "must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two," as well as "[o]ther contextual factors, such as whether the complaint was also conveyed to the public." *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012). A public employee's speech is not protected if it is "part-and-parcel of [the employee's] concerns about his ability to properly execute his duties." *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 203 (2d Cir. 2010). Directing the speech at issue up the "chain of command" is evidence that the employee is speaking pursuant to his official duties. *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 180 (E.D.N.Y. 2010) (holding that a security guard was speaking as a public employee when he "directed his complaints up the operational chain of command"); *see also Carter v. Inc. Vill. of Ocean Beach*, 415 F. App'x 290, 293 (2d Cir. Mar. 18, 2011) (finding that plaintiffs

were speaking pursuant to their official duties where their "allegations establish no more than that they reported what they believed to be misconduct by a supervisor up the chain of command—misconduct they knew of only by virtue of their jobs as police officers and which they reported as 'part-and-parcel of [their] concerns about [their] ability to properly execute [their] duties.' " (citing *Weintraub*, 593 F.3d at 203)).

"[U]nder the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description or in response to a request by the employer." *Weintraub,* 593 F.3d at 203. "*Weintraub* and its progeny make clear that merely reporting information outside the chain of command is not necessarily sufficient, in and of itself, to establish that a public employee was speaking as a citizen." *Williams v. Cty. of Nassau*, 779 F. Supp. 2d 276, 283-84 (E.D.N.Y. 2011), *aff'd*, 581 F. App'x 56 (2d Cir. 2014); *see also Malgieri v. Ehrenberg*, 2012 WL 6647515, at *1 (S.D.N.Y. 2012) (speech that is outside the chain of command is not necessarily dispositive of whether a person is speaking as a citizen). Hence, even where the speech is made outside the "chain of command," a public employee speaks pursuant to his official duties if his speech was "part-and-parcel of his concerns about his ability to properly execute his duties." *Weintraub*, 593 F.3d at 203.

Where speech "owes its existence" to the employee's job duties, or is of the sort that is derived from special knowledge resulting from the speaker's employment, it is more likely that the speech was made as an employee than as a

citizen. *Taylor v. New York City Dep't of Educ.*, 2012 WL 3890599, at *3, *5, *7 (S.D.N.Y. Sept. 6, 2012). Where a speaker, despite going "outside the chain of command," engages in speech to an entity to which he regularly interacts as part of his job, courts have held that speech is made pursuant to the speaker's official duties. *Anemone v. Metro. Transp. Auth.,* 629 F.3d 97, 115-17 (2d Cir. 2011).

**B. The Relevant Facts as Admitted by Plaintiff**

The facts as admitted by Plaintiff with respect to the three communications at issue are:

<u>The FBI Meeting</u>

In December 2017, Plaintiff and Dr. Waronker, the then Superintendent of the District ("Waronker"), attended a meeting with agents of the FBI at the FBI's offices in Mineola, New York. Plaintiff was invited to attend by Waronker, his immediate supervisor. "During the meeting, Plaintiff provided detailed information to the FBI including, but not limited, to school safety and security issues arising from unsupervised and unauthorized students in the hallways, gang presence and the absence of effective policies, chronic student absences without corrective policies, weapons in the school, including weapons confiscated from students and stored without appropriate inventory procedures or surrender to law enforcement, attendance at the school by students who were no longer eligible as students, former employees being paid although no longer working, patronage hiring of ineffective and poor-performing security personnel, . . . falsely reported student

registrations and fraudulently procured funding.". (Pl,'s Counter 56.1 Statement at ¶¶ 15-17.)

The Videoconference with the NYDOE

Plaintiff and Waronker met together by video conference call with the Deputy Commissioner of Education on December 4, 2017 during which a PowerPoint presentation was presented to the Deputy Commissioner. (Pl,'s Counter 56.1 Statement at ¶¶ 20-21.) Plaintiff was introduced by Waronker to the Deputy Commissioner as the Deputy Superintendent for the District. While Plaintiff did not create the PowerPoint it "contained Plaintiff's work product." The presentation set forth numerous concerns of corruption and improprieties in the District. (*Id*. at ¶¶ 22-25.)

The Plante Moran Preliminary Report

In December 2017, Plante Moran, the District's forensic auditor, provided Plaintiff and Waronker with its preliminary findings. Thereafter on January 11, 2018. Plaintiff received a copy of a preliminary report issued by Plante Moran because he was Deputy Superintendent and because Lawrence Dobroff, the Assistant Superintendent of Business of the District ("Dobroff"), was directed by Waronker to provide the report to Plaintiff so he (Plaintiff) could forward the report to the Board. Plaintiff passed the preliminary report issued by Plante Moran to Regina Armstrong ("Armstrong"), who was the District's Acting Superintendent of Schools at that time (the Board having placed Waronker on administrative leave with pay), so she could send it to the Board. He sent the report by the District's

email system. Plaintiff was interested in the findings in the report because he was Deputy Superintendent of the District.[2] (*Id.* at 31-36.)

**C. Plaintiff's Speech was Not as a Citizen**

In support of his First Amendment claim, Plaintiff relies upon the absence of any reference to the identification or exposure of corruption, mismanagement, or educational and financial malfeasance in his official job description. That job description is as follows:

> to supervise assigned assistant superintendents and chief information officer, review and interpret all laws, regulations, statutes, rules and policies affecting the school division, respond to inquiries for interpretation from division staff on matters not clearly covered by regulation, policy or legislation, annually evaluate assigned assistant superintendents, chief information officer and principals for job effectiveness, oversee administration of the fiscal and human resources of assigned departments, review evaluations submitted by assigned assistant superintendents and chief information officer on personnel under their supervision, oversee, implement and evaluate a strategic plan, assist in the preparation and administration of budget[s] fro[m] assigned departments, assist in the determination of types of programs needed by the school division and make recommendations, support the Superintendent in the review and revision of operational goals and objectives, and efforts to measure progress toward their attainment, prepare and provide workshop presentations for the Board, establish and maintain effective working relationships with community and state agencies, area businesses, industries and other organizations, organize and/or chair various committees as directed, explain and interpret programs to staff, parents and the general public, collaborate and work cooperatively with advisory boards, and respond to parent and community concerns.

[2] The Court notes that Plaintiff also avers that "he communicated as a citizen." (DE 43 at ¶ 30.) However, whether he communicated as a citizen is a legal issue.

But that focus is too narrow. As noted earlier, "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description or in response to a request by the employer." *Weintraub,* 593 F.3d at 203. Moreover, the proper inquiry entails not only plaintiff's job responsibilities but "the nature of the speech and the relationship between the two," as well as "[o]her contextual factors. *Ross*, 693 F.3d at 306. Viewing all those factors in the light most favorable to Plaintiff, Plaintiff's First Amendment retaliation claim must fail.

First, to the extent the Deputy Superintendent is charged, as Plaintiff was, with oversee[ing the] fiscal . . . resources of assigned departments" and "assist[ing] in the preparation and administration of budget[s] for assigned departments," such improprieties as, for example, "former employees being paid although no longer working," squarely fall within Plaintiff's job responsibilities even though the word "corruption" is absent.

Further, the improprieties that were the subject of the discussions with the FBI and the NYDOE were discovered as a result of the extensive reviews conducted by Waronker and Plaintiff. During their review of student transcripts to determine graduation needs for students, they discovered pervasive academic and financial fraud, including falsification of student population and graduation rates. During the review of facilities, they found, among other things, crumbling, mold-infested trailers, unmaintained and decaying boilers, and vermin infestation. Plaintiff also

became aware "of other gross financial improprieties," including the District's head of food services utilizing District equipment and facilities for a catering business. (Comp. ¶¶ 25-35.)[3] Thus, while his job description may not have included uncovering improprieties, it did include " oversee[ing] administration of the fiscal and human resources of assigned departments," " oversee[ing] , implement[ing] and evaluat[ing] a strategic plan, . . . assist[ing] in the determination of types of programs needed by the school division and mak[ing] recommendations, support[ing] the Superintendent in the review and revision of operational goals and objectives, and efforts to measure progress toward their attainment" as part of his duties. The uncovering of academic and financial fraud directly affected his ability to perform those duties.

With respect to the Plante Moran preliminary report, his communication of that report was an internal communication and one that he was asked to perform because of his position in the district. See DE 43 at ¶¶ 28, 29 (he received a copy of the report because he was Deputy Superintendent and because he was directed to o provide the report to Armstrong). In other word he forwarded the report up the chain of command in his role as an employee. Moreover, he used the District's email system to send the report to Armstrong. Given these undisputed facts, the only conclusion to be drawn is that the communication of the report is not protected speech as it was in his role as an employee.

---

[3] While a complaint is not normally evidence, the allegations therein may be considered on a motion for summary judgment as a judicial admission. *See W. World Ins. Co. v. Stack Oil. Inc.* 922 F2d 118, 121-122(2d Cir. 1990).

Similarly, based on the undisputed facts, Plaintiff speech with respect to the videoconference with the NYDOE and the meeting with the FBI was in his capacity as an employee. According to Plaintiff, he was on the videoconference as the District's Deputy Superintendent and because the PowerPoint presentation contained his "work product and was a joint presentation of Dr. Waronker and Plaintiff." and he confirmed what Waronker presented. (*Id.* at ¶¶20-23.) In other words, he was there in his capacity as Deputy Superintendent and his communications during that conference were in that capacity.

Turning then lastly to the communication with the FBI, Plaintiff was asked to attend by his then supervisor, Waronker, and based on the record that invitation was based on Plaintiff's position and role in uncovering the various improprieties. As such he was at the FBI in his employment capacity and his speech concerning the various improprieties was an employee. *See also Waronker v. Hempstead Union Free School District,* 788 F. App'x 788, 792093 (2d Cir. 2019) ("Waronker did not bear an obligation as a private citizen to communicate with law enforcement about the School District's corruption and mismanagement." *Waronker v. Hempstead Union Free School District,* 788 F. App'x 788, 792093 (2d Cir. 2019).

Inasmuch as the speech at issue was not as a citizen, Plaintiff's First Amendment retaliation claim necessarily fails and Defendants are entitled to summary judgment thereon.[4]

---

[4] Having concluded that Plaintiff's speech was an employee, it is unnecessary to address the issue of causation. Moreover, given that the claim of First Amendment retaliation fails, the *Monell* claim against the District necessarily fails as the

## VI. The State Law Claim

Having granted the motion for summary judgment on Plaintiff's' federal claim, there is no longer any independent basis for federal jurisdiction in this action. Although the Court has the discretion to exercise supplemental jurisdiction over Plaintiff's remaining state law claim, it declines to do so. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see also N.Y. Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) ( holding that dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where the resolution of the state law claims entails resolving additional legal and factual issues).

Accordingly, plaintiffs' state law claim is dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, the Court declines to adopt the R&R of Judge Locke, grants Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim and dismisses his state law claim without prejudice. The Clerk of Court is directed to enter judgment accordingly and to close this case.

---

presence of an underlying constitutional violation is a predicate to *Monell* liability. *See, e.g., Askins v. Doe*, 727 F.3d 248, 253-54 (2d Cir. 2013) ("[T]he plaintiff's failure to secure a judgment against the individual actors would . .. preclude a judgment against the municipality if the ruling . . . resulted from the plaintiff's failure to show that they committed the alleged [constitutional] tort.") (emphasis omitted).

**SO ORDERED.**

Dated: Central Islip, New York
February 9, 2022

s/ Denis R. Hurley
Denis R. Hurley
United States District Judge